# Washington and Lewis v. The State.

## Assault with Intent to Murder.

1. *Indictment; sufficiency of.*—An indictment is not demurrable because it concludes "against the peace and dignity of the State of Alabama," instead of "against the peace and dignity of the same."

2. *Confessions; admissibility of.*—It is for the court to determine the admissibility of a confession, in view of the age, condition, situation and character of the prisoner, and the circumstances surrounding him at the time the confession is made. If voluntarily made—without the appliance of hope or fear by any other person—the confession should be admitted. The confessions of the prisoners, under the evidence in this case, were properly admitted.

3. *Same; province of court as to.*—The court alone determines the admissibility of a confession, and when admitted the jury cannot indulge any inquiry as to its competency, but must determine its credibility and the weight to be given it.

4. *Charge to jury; what properly refused.*—A charge which would devolve on the jury the duty of inquiry into the admissibility of a confession, is properly refused.

5. *Assault with intent to murder; what not element of.*—It is the intent unlawfully and maliciously to kill the person assaulted, which constitutes the crime of an assault with the intent to murder. If the person assaulting or participating in the assault upon another, does so with the intent unlaw-

[Washington and Lewis v. The State.]

fully and maliciously to kill him, he is guilty, although he did not know the person assaulted.

APPEAL from Circuit Court of Sumter.

Tried before Hon. H. T. TOULMIN.

The indictment in this case, which was in the form prescribed by the Revised Code, charged that before the finding thereof the defendants, Cato Washington and Cæsar Lewis, with five other persons, "unlawfully and with malice aforethought, did assault Dr. S. D. Smith with the intent to murder him, against the peace and dignity of the State of Alabama."

On the application of the defendants, Washington and Lewis, a severance was had as to them, and the trial was transferred from the county of Marengo, in which the indictment was found, to the county of Sumter. On the trial the defendant, Washington, demurred to the indictment, because it concluded "against the peace and dignity of *the State of Alabama*," instead of "against the peace and dignity *of the same*," as required by sec. 19, of article vi. of the constitution. The demurrer was overruled.

The defendants reserved separate bills of exceptions. The testimony and the points reserved were the same in each, except as hereinafter stated. On the trial, Dr. S. D. Smith testified that on the night of the 26th day of July, 1874, while waiting to have some draw-bars let down for him, to pass near a patient's house, several guns were suddenly fired at him; whereupon he rode off rapidly towards his own residence, near Jefferson, in Marengo county. Next day his neighbors, white men, commenced an investigation, and several negroes, including the defendant Washington, were arrested on the charge of shooting at witness. On that day, while the defendant Cato.Washington was in custody, "witness approached and requested him to tell what he knew about the shooting, and said he (witness) did not want to punish him, but he wanted to know who were the parties who shot at him, and the witness further stated there were no promises or threats employed by him to induce the prisoner to confess. The prisoner to show that no confession made by him to said Smith should be admitted as evidence against him, introduced one Hildreth, who testified that he was arrested at the same time and upon the same charge, and that while witness and prisoner were in the custody of two white men, Hudson and Whitfield, one Godasky, a white man, approached them, having a pistol in his hand, and told the prisoner Washington, if he did not tell the truth about

[Washington and Lewis v. The State.]

shooting at Dr. Smith he (said Godasky) would kill him. Cato replied that he knew nothing about it, when Godasky struck him with the pistol. Hudson and Whitfield then interposed, saying that they would protect the prisoner, and drove Godasky off. Having shown this, prisoner objected to allowing any confession made by him, in response to the request of Smith, to be received as evidence against him; but the court overruled the objections and permitted the witness Smith to testify, that in response to his request, the prisoner then and there confessed, "that he, and several other negroes, belonging to an organization known as the "ku-klux," and as such went down to said bars on said night, and shot at him, said witness; that he, the prisoner, had no gun on that occasion, but had a six-shooter pistol, and was the musician who called the organization together, and was present when such shooting took place." One Ellis, a witness for the State, testified, that on the second day after the shooting he heard several of the parties charged in the indictment, among them the prisoner, confess that they shot at said Smith on said night, and that the prisoner then said he had confessed it, because he thought it would go lighter with him if he did. The court refused to exclude this evidence, on motion of the prisoner, (on the ground that said confession was not competent evidence against him,) and the defendant duly excepted. The State then introduced one Gilmore, who testified, that the morning after the arrest, having heard that the prisoner had confessed the day before, he saw the prisoner and others charged with him; and the prisoner confessed that he was with the party who shot at Dr. Smith on said night, and took part therein by calling the members of the ku-klux together, and being present. The prisoner moved to exclude the confessions testified to by this witness, on the ground that they were incompetent and illegal evidence against him. The court overruled the motion and the prisoner duly excepted.

The bill of exceptions does not profess to set out all the evidence, but states that "there were no other witnesses than Smith, Ellis and Gilmore to the confessions of the prisoner."

After the court had charged the jury generally, the defendant Washington requested the following charge, in writing: "If the jury believe that the confessions of the defendant Cato Washington to the witnesses Smith, Ellis and Gilmore were made with the hope that by confessing he would obtain a mitigation of his punishment, or from any other cause that might be fairly presumed to exercise an undue influence on

[Washington and Lewis *v*. The State.]

the defendant's mind, then the jury ought not to convict on the evidence based on such confessions only." The court refused to give this charge and the defendant duly excepted.

The testimony on the trial of the defendant Cæsar Lewis was substantially the same as that introduced on the trial of his co-defendant, Cato Washington. The bill of exceptions in the latter case, recites that after the witness Smith had stated the circumstances of the assault and his conversation with the defendant Washington, as herein-before stated, he was asked "as to the confession of the defendant Cæsar Lewis, to which the defendant Lewis objected, on the ground of the evidence of said witness being general and not having connected said Lewis with the shooting. The court overruled the objection, and the defendant Lewis excepted. Smith was then permitted to testify, against the objection and exception of said Lewis, that said Lewis while in the custody of the white men referred to, having been told that Cato Washington had made an affidavit that he (Cæsar Lewis) with the other prisoners charged, including the said Cato, were guilty of shooting at Dr. Smith, confessed that he was guilty. The witness, in answer to a question what caused the prisoner to confess, stated that while said Cæsar was under arrest as aforesaid, and after the said Cato had made the affidavit referred to, of which Cæsar was informed, he was asked the question and answered that he was guilty. The defendant then moved to exclude the confession, on the ground that the proper predicate had not been laid, but the court overruled the objection and permitted the evidence to go to the jury, and the defendant duly excepted.

One Ellis testified to a similar confession, and that it was made while defendant was in custody, after being informed that Cato Washington had made the affidavit above referred to, and that Cato gave as a reason for making it that he thought it would go lighter with him. The defendant moved to exclude this testimony, on the grounds of objection made to the testimony of the witness Smith, but the court overruled the objection, and the defendant duly excepted.

This bill of exceptions does not profess to set out all the evidence, but does state that the foregoing was all the evidence in regard to the confessions of the prisoners.

After the court had charged the jury generally, the defendant Cæsar Lewis requested the following charge in writing: "If the defendant, Cæsar Lewis, did not know who was being assaulted, and did not know Dr. Smith, he must be acquitted." The court refused to give this charge, and the defendant duly excepted.

. W. G. LITTLE, for appellants.

JOHN W. SANFORD, Attorney General, *contra.*

BRICKELL, C. J.—1. The indictment is in the form prescribed by the Code. Its sufficiency, and the power of the legislature to prescribe this, and the other forms of indictment contained in the Code, is not now an open question.

2. Before any confession can be received in evidence in a criminal case, it must be shown to the court that it was voluntary—that is, made without the appliance of hope or fear, by any other person. Whether it was so made or not is for the court to determine upon consideration of the age, condition, situation and character of the prisoner, and the circumstances surrounding him when it was made. Under the authority of *Moore* v. *State*, 36 Ala. 211 ; *Aaron* v. *State*, 37 Ala. 106 ; S. C., 39 Ala. 75 ; *King* v. *State*, 40 Ala. 314 ; *Mountain* v. *State*, *ib.* 344, the confessions of the prisoner were properly admitted.

3. When a confession is admitted in evidence by the court, it does not lie in the province of the jury to indulge any inquiry into its competency. Their only duty is to determine its credibility and effect. They may entertain a reasonable doubt of its truth, and if they do, should not convict. They cannot reject it as inadmissible. *Brister* v. *State*, 26 Ala. 107. The charge requested by the defendant Cato, would in effect have devolved on the jury the duty of inquiring into the admissibility of the confession and revising the action of the court on that question, and it was therefore properly refused. *Bob* v. *State*, 32 Ala. 560.

4. The defendant Cæsar was guilty if he made or participated in the assault, with the intent to murder, although he did not know the person assaulted. Knowledge of the person assaulted is not an element of the offense. It is the intent unlawfully and maliciously to kill the person assaulted that constitutes the crime.

There is no error in the record, and the judgment must be affirmed.