This cause was originally before this court in Morrison v.State, 398 So.2d 730 (Ala.Cr.App. 1979), in which this court affirmed appellant's conviction and sentence of death for the murder of Marguerite McClenny during the course of a robbery. Thereafter, this court, at the direction of our Supreme Court's ruling in Morrison v. State, 398 So.2d 751 (Ala.Cr.App. 1981), reversed and remanded the case for a new trial on the basis ofBeck v. State, 396 So.2d 645 (Ala. 1980).
On remand the appellant was afforded a new trial which comported with the bifurcated trial requirements ofBeck. Appellant was again convicted and sentenced to death, and it is from this result that he now appeals.
A detailed account of the facts of this case appear inMorrison v. State, 398 So.2d 730 (Ala.Cr.App. 1979). On retrial the facts were substantially the same and, finding a detailed restatement of the facts unnecessary, we refer the reader toMorrison, supra, for a complete statement of the facts.
As a short rendition of the facts, however, we now include the relevant portion of the trial court's findings of fact, which are as follows:
 "On the 4th day of February, 1977, the defendant and his brother went to McClenny Furniture Company in Eufaula, Alabama, for the purpose of committing a robbery. The defendant's brother, James Morrison, remained in the automobile while the defendant went inside for such purpose. Mrs. Marguerite McClenny was in charge of the store at the time the defendant entered and was alone. Mrs. McClenny had just returned from the bank where she had deposited almost all of the money on hand at the store on that day, keeping only five dollars. The defendant deliberately shot her either in the stomach or the chest and while she *Page 40 
was immobilized by such shot, and in no position to present any threat to him, he undertook to shoot her a second time, although the first shot was sufficient to cause death. In attempting to fire the second shot his pistol jammed and it was necessary for him to manually extract the live round of ammunition and place another round in the chamber, at which time he completed his vicious execution of Mrs. McClenny. Whereupon, he left with the fruits of his crime, which consisted of a trucker's type wallet which contained five dollars in currency, a silver one-half dollar, and several keys to various vehicles belonging to the McClenny Furniture Company. These items were later recovered in a storm sewer, which was pointed out to them by the defendant after he had been apprehended some months later and had confessed to the crime.
 "The defendant, Jesse Lee Morrison, was tried under an indictment which charged him with the capital offense of intentionally killing the victim while committing a robbery as set out in Section 13-11-2(a)(2), Code of Alabama, 1975.
 "Immediately upon receipt of the jury's verdict of guilty to such capital offense, the Court held a hearing before the same jury to allow the State and defendant to present further evidence of aggravating and mitigating circumstances and to present arguments for and against the imposition of the death penalty in this case. The State introduced the evidence taken during the guilt phase of the trial and argued for the death penalty. The defendant also offered the evidence taken upon the guilt phase of the trial. After the State and defense had argued and the Court had instructed the jury as to the law, the jury retired and, after deliberation, returned a verdict fixing the defendant's punishment at death."
From this conviction and sentence, the defendant now appeals raising the following twenty-four issues.
 I
The appellant Jesse Lee Morrison first contends that the Alabama Supreme Court's decision in Beck v. State,396 So.2d 645 (Ala. 1980), which was the basis of his retrial, usurped the power of the legislature in violation of Article III, Sections 42 and 43 of the Alabama Constitution of 1901, and violated the Eighth and Fourteenth Amendments to the United States Constitution.
The Alabama Supreme Court in Beck stated that "under the separation of powers doctrine, this Court cannot change the offense, but a change in procedure to comport with constitutional requirements is not impermissible." The Alabama Supreme Court has since repeatedly held that the judicial reconstruction accomplished in Beck was procedural and therefore constitutional. Clisby v. State, 456 So.2d 95
(Ala. 1983), Ex parte Potts, 426 So.2d 896 (Ala. 1983). We therefore must reject the appellant's argument that the Beck
decision usurped the authority of the Alabama Legislature in violation of Article III, Sections 42 and 43 of the Alabama Constitution of 1901. We further hold that appellant's retrial under the authority of the Beck decision in no way violated the Eighth and Fourteenth Amendments to the United States Constitution.
 II
The appellant contends that the death qualification of the trial jury denied his rights to trial by a fair, impartial, and representative jury and to reliability in the capital sentencing process, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.
Appellant notes that this precise issue was decided unfavorably to him in Smith v. Balkcom, 660 F.2d 573 (5th Cir. 1981), cert. denied, 459 U.S. 882, 103 S.Ct. 181,74 L.Ed.2d 148 (1982). Furthermore, in Wainwright v. Witt,469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the United States Supreme Court clarified its decision in Witherspoon v.Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and set *Page 41 
forth "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment." The Court stated that the standard is whether the juror's views " 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath,' " 469 U.S. at 433,105 S.Ct. at 857, quoting Adams v. Texas, 448 U.S. 38, 45,100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980). The Court also stated that "in addition to dispensing with Witherspoon's reference to 'automatic' decisionmaking, this standard likewise does not require that a juror's bias be proved with 'unmistakable clarity.' " 469 U.S. at 424, 105 S.Ct. at 852.
Following is the excerpt from the record which led to the dismissal of Mr. Elzie L. Woods because of his position against imposing the death penalty. Mr. LeMaistre began by stating:
 "We are trying today a very important and serious case. It carries, possibly, the death penalty, assuming you find this defendant guilty of the crime with which he is charged. I need to ask you these questions to find out if you have any deep abiding opposition to the death penalty and imposition —. So, if any of these questions I ask you to answer would be yes, please raise your hand.
 "Do any of you have any [conscientious scruples] or moral convictions or religious opposition to the use of the death penalty in a proper case?
"JUROR: I would.
 "MR. LeMAISTRE: Would you give us your name, please.
 "JUROR: Elzie L. Woods. And I would not recommend the death penalty.
"MR. LeMAISTRE: You would not?
"ELZIE WOODS: No. I would exercise mercy.
"MR. LeMAISTRE: You would exercise mercy?
"ELZIE WOODS: Yes.
 "MR. LeMAISTRE: Let me ask you a couple more questions about this, then. Is this opinion in opposition to the use of the death penalty an opinion that you have had for a long time and one that you couldn't change in this particular case?
 "ELZIE WOODS: I just think I could stick with it.
"MR. LeMAISTRE: Sir?
 "ELZIE WOODS: I think as a minister I could stick with it. I would have to. I would be willing to stick with that opinion.
 "MR. LeMAISTRE: You would be willing to stick with your opinion of not imposing the death penalty?
"ELZIE WOODS: (Nods head up and down.)
 "MR. LeMAISTRE: Let me ask you one last question. Is it your opinion if you were selected as a juror in this case that your opposition to the death penalty is such that you would not return a verdict which carried the death penalty regardless of the evidence and instructions from the Court?
 "ELZIE WOODS: I just — I'm kind of hesitant to — I kind of doubt myself on that.
"MR. LeMAISTRE: Please speak up, sir.
 "ELZIE WOODS: I doubt myself on that — in that case.
 "MR. LeMAISTRE: You doubt that you would be able to?
"ELZIE WOODS: I doubt it.
 "MR. LeMAISTRE: Regardless of what the Court told you you doubt you would be able to?
"ELZIE WOODS: (Nods head up and down.)
"MR. LeMAISTRE: Judge, I challenge.
"THE COURT: I grant the challenge.
"MR. McKINNON: Your Honor, could —
 "THE COURT: (Interposing) Do you want to ask him a question?
"MR. McKINNON: Yes, sir.
 "Reverend, if you were instructed by the Court that if certain conditions and circumstances existed in this case, that it is your duty to render this punishment, *Page 42 
would you still be unable to render this punishment in spite of the Court's instructions?
 "ELZIE WOODS: Some things I would go against the Court on, yes. That is one of the things I would stand on.
"MR. LeMAISTRE: We renew our challenge.
 "THE COURT: I grant it. You can come down. I'll grant the challenge on that. And I appreciate you letting us know that information.
"ELZIE WOODS: Yes, sir.
 "MR. LeMAISTRE: And we appreciate your honesty, Reverend.
"(Mr. Elzie Woods excused.)"
Mr. Woods's position and views on capital punishment were clearly such that they "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Witt, supra. We hold, therefore, that Mr. Woods was properly dismissed and that the death qualification of the jury in no way violated the appellant's right to a trial by a fair, impartial, and representative jury or to reliability in the capital sentencing process.
 III
The appellant contends that because the jury was not required to state which aggravating and mitigating circumstances they considered and found or rejected, he was denied reliability in the capital sentencing process and due process in violation of the Eighth and Fourteenth Amendments to the United States Constitution.
This court in Bush v. State, 431 So.2d 555 (Ala.Cr.App. 1982), aff'd, 431 So.2d 563 (Ala. 1983), cert. denied, Bush v. Alabama,464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983), stated that "any such contention that the jury should make specific findings enumerating the aggravating circumstances it found to exist was foreclosed by Proffitt v. Florida, 428 U.S. 242,96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)." In Proffitt, the United States Supreme Court stated that "since . . . the trial judge must justify the imposition of a death sentence with written findings, meaningful appellate review of each such sentence is made possible." 428 U.S. at 250, 96 S.Ct. at 2965. Because the trial court was required to and did set forth in writing findings of fact as a basis for the sentence of death, as required by Code of Alabama, § 13-11-4, we find that appellant can be afforded meaningful appellate review in accordance with the rule in Proffitt and Bush.
 IV
The appellant contends that his conviction should be reversed because he asserts that the evidence fails to conform to the indictment, verdict, and court's findings of fact.
We find that the matters the appellant raises in support of this contention were raised previously, word for word, in his first appeal, Morrison v. State, 398 So.2d 730
(Ala.Cr.App. 1979), rev'd on other grounds, 398 So.2d 751
(Ala. 1981).
The pertinent parts of the prior opinion containing appellant's contentions and the court's ruling were as follows at 398 So.2d 747-48:
 "The appellant argues that there were several inconsistencies between the evidence, the indictment, the jury verdict, and the court's findings. However, the only one asserted by the appellant in brief is that it was alleged that the appellant took a wallet and other items from the person of the deceased when, in fact, they were removed from a drawer in the store in which she was working.
 "Count one of the indictment, upon which the appellant was convicted, charged the appellant with feloniously taking a wallet containing five dollars, a set of keys and a one-half dollar from the person of Marguerite McClenny. Appellant claims this was a fatal variance between the indictment and the proof.
 "This court, in Mays v. State, Ala. Cr. App., 335 So.2d 246, stated:
 " 'To sustain a charge of robbery it is not necessary that the stolen property *Page 43 
be in the actual physical contact with the person of the victim but it is sufficient if the property is taken from his presence or personal protection. . . .'
 "Under the above facts, no variance was made to appear.
 "In addition, the appellant claimed that the following finding of fact by the trial court was 'totally devoid of any evidence to support his findings.'
"The Court's findings stated:
 " 'In attempting to fire the second shot his pistol jammed and it was necessary for him to manually extract the live round of ammunition and place another round in the chamber, at which time he completed his vicious execution of Mrs. McClenny.'
"* * * *
 "Richard Dale Carter, the criminologist in criminal investigation, testified that the pistol was used in the killing and that, when he test-fired the pistol, the second round jammed and had to be manually extracted before the second shot could be fired. Further, there was also testimony that a live round of ammunition was found on the floor of the store next to the deceased.
 "Therefore, it is our judgment that this testimony was sufficient to support the trial court's finding of fact."
We hereby adopt this portion of our prior ruling and again hold that there was no failure of the evidence to conform to the indictment, verdict, and court's finding of fact.
 V
Appellant contends that the trial court erred in refusing to give his requested charge number five, which was as follows:
 "If you see fit, whether mitigating circumstances exist or not, you may recommend mercy for the defendant. This recommendation is solely in your discretion and not controlled by any rule of law. You may make such recommendation with or without a reason."
In Whisenhant v. State, 482 So.2d 1225, (Ala.Cr.App. 1982), this Court discussed the propriety of this precise charge and held that it was properly refused as an erroneous statement of the law in Alabama. This holding was specifically affirmed by the Alabama Supreme Court in Ex parte Whisenhant,482 So.2d 1241 (Ala. 1983).
This court in Whisenhant stated that the correct principle underlying this issue was stated in Beck v. State,396 So.2d 645 (Ala. 1980), as follows:
 "The court shall instruct the jury that in determining whether to fix a punishment of death, the jury must weigh the aggravating and mitigating circumstances in determining whether to fix the punishment at death. The trial court shall instruct the jury to avoid any influence of passion, prejudice or other arbitrary factor while deliberating and fixing the sentence."
We noted that while it is clearly the duty of the jury to weigh aggravating and mitigating circumstances it is not, as this charge implies, free to arbitrarily ignore any factor either positive or negative in arriving at the correct sentence. We also noted that we viewed Proffitt v. Florida,supra, as having tacitly held that such a mercy option is not a constitutional requirement. In Proffitt, Mr. Justice White, in his concurrence, noted that in Florida when the aggravating circumstances outweigh the mitigating circumstances the sentencing authority is required to impose the death penalty. We therefore noted that the required imposition of the death penalty, regardless of mercy, was determined to be constitutional in Proffitt, and that this was in keeping with the interest that arbitrary and capricious imposition of the death penalty be avoided. Hopper v. Evans, 456 U.S. 605,102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). Here again, for the above stated reasons, we hold that the trial court did not err in refusing to grant appellant's requested charge number five.
 VI
The appellant contends that the trial court erred in refusing to give his requested *Page 44 
charge number 14. This charge reads as follows:
 "In this proceeding your verdict must be unanimous before you can sentence Jesse Morrison to death. Each of you must put in writing whether the statutory aggravating circumstances alleged by the prosecution exist or do not exist, and each of you must sign that signing. If you are unable to unanimously agree that Jesse Morrison should be executed by electrocution, then he will be sentenced to a term of life imprisonment without the possibility of parole."
The first sentence is a correct statement of law. However, this charge was effectively given by the trial court when it instructed the jury as follows:
 "Your verdict must be unanimous. All twelve of you must agree before you can reach any punishment verdict in this case. Any punishment verdict you reach must be the verdict of each and every one of you."
Where a requested charge is fully and substantially covered elsewhere in the court's oral charge, it is properly refused.Barnes v. State, 361 So.2d 390 (Ala.Cr.App.), cert. denied,361 So.2d 396 (Ala. 1978); Morrow v. State, 52 Ala. App. 145,290 So.2d 209 (1973), cert. denied, 292 Ala. 743, 290 So.2d 213
(1974), cert. denied, Morrow v. Alabama, 419 U.S. 853,95 S.Ct. 97, 42 L.Ed.2d 85 (1974).
The second sentence of the proposed charge, which calls for each juror to "put in writing whether the statutory aggravating circumstances alleged by the prosecution exist or do not exist" and to sign such writing, is an incorrect statement of the law. As we have stated above, the jury is not required to state which aggravating and mitigating circumstances they considered and found or rejected. They likewise, here, should not be required to put in writing which aggravating circumstances they found to exist or not exist.
The third sentence of the proposed charge, which provides that in the event the jury should be unable to unanimously agree that the appellant should be executed that he would be sentenced to a term of life imprisonment, is not a proper charge to the jury. This point was addressed in Coulter v.State, 438 So.2d 336 (Ala.Cr.App. 1982), aff'd, 438 So.2d 352
(Ala. 1983), when this court stated:
 "The appellant correctly cites the mandate in Beck that '[i]f the jury cannot agree on a sentence of death, the defendant shall be sentenced to life imprisonment without parole.' 396 So.2d at 663. This mandate, however, is an instruction for the trial court, not for the jury. Beck does not suggest, and we can find no other support for appellant's contention, that a defendant in a capital felony case is entitled to have the jury instructed as to the consequences of a 'hung' jury during its punishment deliberations."
The third sentence of the proposed charge was correctly not given by the trial court.
We, therefore, find that the appellant's requested charge number 14 was correctly refused in its entirety by the trial court.
 VII
The appellant contends that the trial court erred in refusing to give certain of his "requested charges that would have instructed the jury that they could not impose a death sentence unless it found beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances."
This court in addressing this issue in Whisenhant v. State,supra, found as follows:
 "In Alabama, the State must prove the aggravating circumstances averred in the indictment beyond a reasonable doubt.
 "However, the fact that due process protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged is not relevant under Beck as to weighing aggravating and mitigating circumstances at the sentence determining phase. *Page 45 
 "The separate acts of proving facts at the guilt phase and weighing facts against each other at the penalty phase are not to be confused."
This court went on to hold that, while the aggravating circumstances must be proven beyond a reasonable doubt, the jury may return the death penalty if it simply finds the aggravating circumstances are not outweighed by the mitigating circumstances and further held this procedure to be in accord with sentencing procedures previously upheld as meeting constitutional standards. Whisenhant, supra; Gray v. Lucas,677 F.2d 1086 (5th Cir. 1982), cert. denied, 461 U.S. 910,103 S.Ct. 1886, 76 L.Ed.2d 815 (1983); People v. Frierson, 25 Cal.3d 142,158 Cal.Rptr. 281, 599 P.2d 587 (1979).
The Eleventh Circuit Court of Appeals in Ford v. Strickland,696 F.2d 804 at 818 (11th Cir. 1983), cert. denied,464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), held as follows:
 "While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see State v. Dixon, 283 So.2d 1, 9
(Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974), and State v. Johnson, 298 N.C. 47, 257 S.E.2d 597, 617-18 (1979), the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party."
Therefore, while the aggravating circumstances must be proven beyond a reasonable doubt at the guilt phase, the jury may return the death penalty if it finds at the penalty phase simply that the aggravating circumstances outweigh the mitigating circumstances.
 VIII
The appellant contends that the trial court erred when it refused his requested charge to the jury that it was required to find that the mitigating circumstance of no significant history of prior criminal activity applied to his case.
In Spivey v. Zant, 661 F.2d 464 at 471 (5th Cir. 1981), cert. denied, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982), the court held:
 "[T]he eighth and fourteenth amendments require that when a jury is charged with the decision whether to impose the death penalty, the jury must receive clear instructions which not only do not preclude consideration of mitigating factors, Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), but which also 'guid[e] and focu[s] the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender . . .' Jurek v. Texas, 428 U.S. [262] at 274, 96 S.Ct. at [2950] 2957 [49 L.Ed.2d 929 (1976)]. In most cases, this will mean that the judge must clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death; in order to do so, the judge will normally tell the jury what a mitigating circumstance is and what its function is in the jury's sentencing deliberations."
The trial court in its charge to the jury read the entire list of mitigating circumstances provided by § 13-11-7, Code of Alabama 1975, and instructed them that they could consider evidence presented at trial or in the sentencing hearing in determining whether any of them existed in this case. The first of these seven statutory mitigating circumstances which the court read to the jury was "(1) The defendant has no significant history of prior criminal activity."
The trial court also instructed the jury that:
 "[I]n addition to the mitigating circumstances I have just read to you, you may also consider as a mitigating circumstance any aspect of the Defendant's character and life and any of the circumstances of the capital offense which tend to indicate that the defendant should not be sentenced to death. Mitigating circumstance *Page 46 
does not have to be included in the list I have read to you in order for it to be considered by you. A mitigating circumstance considered by you should be based on the evidence you have heard. If you are satisfied from the evidence presented during the guilt stage of the trial or during this sentence hearing that a mitigating circumstance exists in this case, then you may consider it. A mitigating circumstance need merely be proven to your satisfaction and not beyond a reasonable doubt for you to consider it. Only an aggravating circumstance must be proven beyond a reasonable doubt, and that burden is on the state."
In explaining the weighing process between aggravating and mitigating circumstances, the court instructed the jury:
 "If you unanimously find beyond a reasonable doubt the aggravating circumstance that I instructed you on previously does exist in this case, then you should proceed to weigh that aggravating circumstance or circumstances against the mitigating circumstances which exist in this case. Based upon that weighing process, you should determine whether the punishment of the Defendant in this case should be fixed at life imprisonment without parole or at death.
 "The process of weighing aggravating and mitigating circumstances against each other in order to determine the proper punishment is not a mechanical process. Your weighing of the circumstances against each other should not consist of merely adding up the number of aggravating circumstances and comparing that number to the total number of mitigating circumstances.
 "The law of this state recognizes that it is possible, in at least some situations, that one or a few aggravating circumstances might outweigh a larger number of mitigating circumstances. The law of this State also recognizes that it is possible, in at least some situations, that a large number of aggravating circumstances might be outweighed by one or a few mitigating circumstances. In other words, the law contemplates that different circumstances may be given different weights or values in determining the sentence in a case, and you the jury are to decide what weight or value in determining sentence is to be given to a particular circumstance in light of all the other circumstances in this case. You must do that in the process of weighing the aggravating circumstance or circumstances against the mitigating circumstances."
In explaining the sentencing function to the jury and the application of their findings with regard to aggravating and mitigating circumstances, the trial court instructed the jury:
 "I will give you two verdict forms which you are to use in returning your verdict. One verdict form reads: 'We, the Jury, fix the punishment of the Defendant, Jesse Lee Morrison, at life imprisonment without parole.' And there is a place on the verdict form for your foreman's signature. If you find that the State did not prove beyond a reasonable doubt the existence of the one aggravating circumstance I instructed you on, then you should return this form signed by your foreman. If you find that the State did prove beyond a reasonable doubt the existence of the one aggravating circumstance that I instructed you on but that the aggravating circumstance is outweighed by the mitigating circumstances in this case, then you should also return this verdict form signed by your foreman fixing the Defendant's punishment at life imprisonment without parole.
 "The other verdict form which I will give you reads as follows: 'We, the Jury, fix the punishment of the Defendant, Jesse Lee Morrison, at death.' There is a place on the verdict form for your foreman's signature. If you unanimously find that the State proved beyond a reasonable doubt the existence of the aggravating circumstance that I instructed you on, and if you unanimously find that that aggravating circumstance outweighs the mitigating circumstances in *Page 47 
this case, then you should return this verdict form signed by your foreman."
We find that the trial court fully informed the jury of the function of mitigating circumstances in their deliberations and the option to recommend against death as required by Spivey v.Zant, supra. The court specifically instructed the jury under § 13-11-7(1) that a mitigating circumstance they could consider if they found it to exist was the lack of a significant history of prior criminal activity on the part of the defendant. At the sentencing hearing the appellant testified that he had no criminal convictions except for juvenile convictions. The jury, therefore, was presented with the evidence concerning appellant's criminal record and it was for them to consider its weight. The trial court is not required to specifically charge the jury that this mitigating circumstance did in fact exist.
Furthermore, the trial court judge as the final sentencing authority under § 13-11-4, Code of Alabama 1975, considered the aggravating and mitigating circumstances in the case. In its findings of fact the court specifically found the mitigating circumstance of no significant prior criminal activity on the part of the defendant under § 13-11-7(1) did exist in this case, but that it was not sufficient to outweigh the aggravating circumstance found to exist under § 13-11-6(4) which is that "The capital felony was committed while the defendant was engaged . . . in the commission of . . . robbery."
We hold, therefore, that the trial court did not err in refusing to give appellant's requested charge number 17.
 IX
The appellant contends that the trial court erred when it refused to give his requested charge number 15 which was as follows:
"A mitigating circumstance does not have to be proven beyond a reasonable doubt to exist. You must find that a mitigating circumstance exists if there is any substantial evidence to support it."
The appellant argues that "there is no basis whatsoever for requiring that the defendant prove any matter at any time beyond a reasonable doubt" and thus that it was error for the trial court to refuse the charge. We find, however, that the trial court charged the jury as follows:
 "If you are satisfied from the evidence presented during the guilt stage of the trial or during this sentence hearing that a mitigating circumstance exists in this case, then you may consider it. A mitigating circumstance need merely be proven to your satisfaction and not beyond a reasonable doubt for you to consider it. Only an aggravating circumstance must be proven beyond a reasonable doubt, and that burden is on the State."
According to Cochran v. State, 500 So.2d 1161
(Ala.Cr.App. 1984), this was a correct statement of the burden of proof necessary to prove mitigating circumstances. Furthermore, where a requested charge is fully and substantially covered elsewhere in the court's oral charge, it is properly refused. Barnes v. State, 361 So.2d 390
(Ala.Cr.App.), cert. denied, 361 So.2d 396 (Ala. 1978); Morrowv. State, supra.
We therefore find that appellant's requested charge number 15 was correctly refused by the trial court.
 X
The appellant contends that the trial court erred in refusing to give his requested charge number 3, which was as follows:
 "The highest court of the land, the Supreme Court of the United States, has found capital punishment to be legal in the State of Alabama. Thus, in your deliberations on the question of punishment, you are to presume that if you sentence Jesse Morrison to death, he will be executed by electrocution."
In Williams v. State, 461 So.2d 834 (Ala.Cr.App. 1983), rev'd on other grounds, 461 So.2d 852 (Ala. 1984), this court addressed *Page 48 
the propriety of the trial court's refusal to charge on a defendant's requested charge which was substantially the same as the charge now in question. This court, in holding that the trial court correctly refused to give the defendant's requested charge, held in part:
 "The written requested charge is erroneous as a matter of Alabama law because it ignores the sentence reduction power of the trial judge, Beck v. State, 396 So.2d 645, 663 (Ala. 1980), the sentence review power of the appellate courts, Beck, 396 So.2d at 664, and the commutation power of the governor, Ala. Const. 1901, Amend. 38; Alabama Code Section 15-18-100 (1975).
 "A written requested charge should be refused if it is factually misleading or contains erroneous statements of law. Wilbanks v. State, 289 Ala. 171, 174, 266 So.2d 632 (1972); Yessick v. State, 274 Ala. 488, 491, 149 So.2d 818 (1962).
 "The Supreme Courts of Mississippi and Tennessee have held that it is not error for a trial court to refuse to give an instruction materially and substantially identical to the particular one requested here. Johnson v. State, 416 So.2d 383, 390-91 (Miss. 1982); State v. Melson, 638 S.W.2d 342, 367 (Tenn. 1982). In Johnson, the Mississippi Supreme Court held that such an instruction was properly refused because it 'was improper and was calculated to confuse the jury.' 416 So.2d at 391. In Melson, the Tennessee Supreme Court noted that 'this is not a full and fair reflection of what the jury was to consider; and dealt more with the effects of the verdict than the verdict itself.' 638 S.W.2d at 367."
461 So.2d 847.
For the above stated reasons we find that appellant's requested charge number 3 was an erroneous statement of Alabama law and was properly refused.
 XI
The appellant contends that it was error for the trial court to admit, over his objection, testimony of a single instance of misfiring of the murder weapon during ballistics testing.
At trial, the appellant objected to testimony concerning the sequence of firing as irrelevant. Later he objected to testimony concerning what had to be done during testing to get the second shot fired, on the grounds that there was no proof that the pistol was in the same condition as it had been at the time of the murder and that one incident of a misfire was not proof of a pattern of malfunctions. Finally, appellant moved to exclude the testimony concerning the misfiring because he contended that was not what it was being tested for and that was not the proper way to test for it. Each of appellant's objections and his motion to exclude were overruled.
Richard Carter, a criminologist specializing in firearms and tool marks for the Alabama Department for Forensic Sciences, conducted the test on the pistol, which was an Astra .25-caliber semi-automatic. Prior to the introduction of the evidence the appellant now contends was erroneously admitted, Mr. Carter had testified that both the bullets removed from the victim and the empty shell casing found near her body were fired from this particular Astra .25-caliber pistol to the exclusion of all other firearms in existence. He further testified that the unfired .25-caliber cartridge had been subjected to the mechanical action of a pistol.
The testimony objected to concerned the problems of malfunction encountered by Mr. Carter while test firing the pistol to obtain the bullets and spent shell casings necessary to arrive at the above conclusions. Therefore, evidence was before the court which established that this was the pistol which fired the fatal shots to the exclusion of all other firearms in existence.
It has been held that the party offering the results of an experiment must pass the "substantial similarity" test. In explaining this test, the Alabama Supreme Court in Neelley v.State, 261 Ala. 290, 74 So.2d 436 (1954), stated: *Page 49 
 "[T]here must be similarity of conditions to give an experiment sufficient probative value to warrant its admission, and if the conditions were dissimilar in an essential particular, the evidence should be rejected. But the authorities are to the effect that it is not necessary that the conditions should be exactly identical. A reasonable or substantial similarity suffices, and the lack of exact identity affects only the weight and not the competency of the evidence. It is for the court to determine whether the conditions are sufficiently similar to warrant admission of this proof, and much must be left to the sound discretion of the trial judge. 22 C.J. 759, 756; 32 C.J.S., Evidence, §§ 590, 587."
261 Ala. at 292, 74 So.2d at 438, quoting Louisville N.R. Co.v. Sullivan, 244 Ala. 485, 490, 13 So.2d 877, 880 (1943). See also Nichols v. State, 267 Ala. 217, 100 So.2d 750 (1958).
We find, due to the evidence already before the trial court, that it could have very easily and correctly determined that the conditions were sufficiently similar to warrant admission of the testimony concerning the malfunction of the pistol. Furthermore, the exercise of the trial judge's discretion in the admission or exclusion of an experiment or test will not be reversed on appeal unless such discretion has been grossly abused. Alonzo v. State ex rel. Booth, 283 Ala. 607,219 So.2d 858, cert. denied, 396 U.S. 931, 90 S.Ct. 269, 24 L.Ed.2d 229
(1969).
Finding no abuse of the trial court's discretion and finding that the "substantial similarity" test was met, we hold that the trial court committed no error by admitting into evidence the testimony concerning the misfiring of the murder weapon during the ballistics test.
 XII
The appellant next contends that the trial court made several findings of fact which were based on speculation or theory.
The first finding of which appellant complains was that the "defendant deliberately shot her either in the stomach or the chest and while she was immobilized by such shot, and in no position to present any threat to him, he undertook to shoot her a second time." He contends that this finding presumes that there was a delay of "at least several seconds between the shots," while the record indicates no such delay.
In testifying about a conversation he had with appellant concerning the shooting, James Arthur Thomas stated:
 "[H]e told me that his brother — him and his brother went to the furniture store to rob it. He asked the lady for the money two or three times and she wouldn't give it to him. The last time he asked her for the money she said, 'Okay, I'll give you the money,' and he said, 'No, bitch, you've played with me too long.' And he said he shot her in the chest and then he shot her again, and then he went out to the car and told his brother he had to kill her."
We find that this testimony, especially the part which says "he shot her in the chest and then he shot her again," indicates a delay between shots and a definite intention on the part of appellant to carry out the second shot. The record, therefore, supports the trial court's finding on this issue and we hold that the trial court in no way erred in making this finding.
The second finding of which appellant complains was the court's finding that "In attempting to fire the second shot his pistol jammed and it was necessary for him to manually extract the live round of ammunition and place another round in the chamber."
Richard Carter testified that the two spent .25-caliber shell casings found near the body of the victim were fired in the murder weapon to the exclusion of all other firearms in existence. He testified that the unfired .25-caliber shell had been worked through the action of an automatic pistol. He also testified that in test firing the murder weapon, he loaded three shells into the magazine. He chambered the first *Page 50 
round and fired. The pistol jammed and in order to fire a second round he had to pull the slide back and eject the second unfired round on the floor in order to get the third round into the chamber.
In view of the testimony presented on this issue, we find that the conclusion reached by the trial court was well founded and a reasonable hypothesis based upon the evidence.
The third finding of which the appellant complains was the trial court's characterization of the killing as a "vicious execution." Appellant contends that an execution cannot be carried out without the authority of at least a de facto government and that the word "vicious" implies that something "was done with a great deal of strength, force or cruelty," while there was no evidence that any of these three elements was present in the present case.
We find appellant's contention to be meritless. Certainly the shooting of an unarmed woman because she did not agree to turn over her money fast enough is both vicious and cruel. Firing a second shot into her already mortally wounded body would make it doubly so. Furthermore, the record supports the trial court's finding that this was an execution style murder.
The written findings of fact complained of were simply a summary, based on the record, of the crime and the appellant's participation in it, as required by § 13A-5-47, Code of Alabama 1975. We find that the trial court's findings were supported by the record and, therefore, that no error was committed.
 XIII
The appellant next contends that the trial court erred in finding that the aggravating circumstances outweighed the mitigating circumstances. He contends that in addition to the statutory mitigating circumstance of no prior criminal history found by the trial court it should have also found as mitigating circumstances that: 1) appellant was from a broken home, 2) appellant was reared in poverty, 3) appellant was under the influence of drugs at the time of the offense, 4) appellant cooperated with law enforcement authorities, 5) appellant behaved well in the courtroom, and 6) appellant did not lie to authorities or the court about his role in the crime.
This court in Cochran v. State, 500 So.2d 1161
(Ala.Cr.App. 1984), noted that "It is not required that evidence submitted by the accused as a nonstatutory mitigating circumstance be weighed as a mitigating circumstance by the trial judge." See also Mikenas v. State, 407 So.2d 892
(Fla. 1981), cert. denied, 456 U.S. 1011, 102 S.Ct. 2307,73 L.Ed.2d 1308 (1982). "The fact that the sentencing order does not refer to the specific types of non-statutory 'mitigating' evidence petitioner introduced indicates only the trial court's finding the evidence was not mitigating, not that such evidence was not considered. . . . What one person may view as mitigating, another may not." Cochran, supra; Dobbert v.Strickland, 718 F.2d 1518 (11th Cir. 1983), cert. denied,468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984).
We find, therefore, that the trial court did not err in not finding the factors listed above to be mitigating circumstances.
 XIV
The appellant next contends that "considering the particular capital offense and the particular defendant, the death penalty is not proportionate to the penalty imposed in similar cases." In support of this proposition, he argues six points: 1) that he is a first offender, 2) that the crime was not committed in an especially crude or heinous manner, 3) that the victim's death was quite quick and involved a minimal struggle, 4) that there was no indication of any kind of torture, 5) that his behavior during the investigation and trial was exemplary, and 6) that there was only one victim.
As to point 1, the trial court considered the lack of a significant criminal history as a statutory mitigating circumstance but found that it did not outweigh the statutory *Page 51 
aggravating circumstance of murder committed during the course of a robbery.
As to point 2, this court finds it difficult to envision a case where a murder is not both "crude" and "heinous." This is especially true in the instant case, where the victim was shot once because she did not agree to turn over her money fast enough and then while mortally wounded, was shot again.
As to point 3, the record is unclear as to how much struggle was involved or how long the victim suffered before her death occurred. Dr. McCahan, who performed the autopsy on the victim, testified that he discovered a one-inch-long curved cut-type wound on the victim's right thumb, which he considered to be a defense wound. He also testified to the presence of various abrasions, both deep wounds going the full thickness of the skin and superficial wounds. The presence of these wounds certainly does not preclude the possibility of a struggle.
Even if there were no struggle and death was instantaneous, we find that these would be improper factors to consider as mitigating circumstances.
As to point 4, the fact that there was no indication that the appellant tortured the victim prior to death is not a proper factor to consider as a mitigating circumstance.
As to point 5, the fact that the appellant behaved well during the investigation and trial is to be expected and again is not necessarily a proper factor to consider as a mitigating circumstance.
As to point 6, that because he committed only one murder, it should be viewed as a type of mitigating circumstance, we find that to be totally without merit and deserving of no further comment by the court.
Appellant contends that he "falls very much outside of the pattern of the typical death penalty defendant."
Appellant apparently makes reference to § 13A-5-53(3), Code of Alabama 1975, which requires this court, whenever a death penalty is imposed, to determine "whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." We have carefully considered this point and have found that the death penalty was invoked in each of "these" recent cases where a murder was committed during the course of a robbery: Ex parteThomas, 460 So.2d 216 (Ala. 1984); Jones v. State, [Ms. 6 Div. 87, January 10, 1984] (Ala.Cr.App. 1984); Thomas v. State,460 So.2d 207 (Ala.Cr.App. 1983), aff'd, 460 So.2d 216 (Ala. 1984);Jones v. State, 450 So.2d 165 (Ala.Cr.App. 1983), aff'd,450 So.2d 171 (Ala. 1984), cert. denied, Jones v. Alabama,469 U.S. 873, 105 S.Ct. 232, 83 L.Ed.2d 160 (1984); Singleton v. State,465 So.2d 432 (Ala.Cr.App. 1983), aff'd, 465 So.2d 443
(Ala. 1985); Bush v. State, 431 So.2d 555 (Ala.Cr.App. 1982), aff'd, 431 So.2d 563 (Ala. 1983), cert. denied, Bush v. Alabama,464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983); Jacobs v.State, 361 So.2d 640 (Ala. 1978), cert. denied, Jacobs v.Alabama, 439 U.S. 1122, 99 S.Ct. 1034, 59 L.Ed.2d 83 (1979). Considering the crime and the defendants in the above cases, we find that in the instant case, the crime and the appellant are in no way atypical in comparison. We therefore find that the sentence of death imposed in the instant case was not excessive or disproportionate to the penalty imposed in similar cases.
 XV
Appellant contends that, because the trial court denied his motion for individual voir dire of the jury, he was deprived of his right to a trial before a fair and impartial jury.
We know of no rule of law which would require the trial court to grant appellant's motion for individual voir dire. Our Supreme Court has previously held that no error occurred where a defendant's motion to examine jurors individually was denied.Seals v. State, 282 Ala. 586, 213 So.2d 645 (1968). *Page 52 
It is within the trial court's discretion as to whether the jury should be qualified in groups. Aaron v. State, 273 Ala. 337, 139 So.2d 309 (1961), cert. denied, 371 U.S. 846,83 S.Ct. 81, 9 L.Ed.2d 82 (1962); Seals, supra. The trial court in the instant case conducted voir dire in groups of twelve. This was within the trial court's discretion.
We find no error in the trial court's denial of appellant's motion for individual voir dire.
 XVI
The appellant contends that the denial of his motion for peremptory challenges in addition to those provided by §12-16-100, Code of Alabama 1975, deprived him of his right to a fair trial. He contends that, no matter how extensive the voir dire, it is impossible to reveal all pre-judgment or predisposition through questioning. He states that this is especially true in cases, such as the instant case, involving (1) publicity, (2) the alleged killing of a white by a black, and (3) capital punishment, and contends that the only way to balance this predisposition is to allow the defense additional challenges.
If appellant believed he could not receive a fair trial due to pretrial publicity or the race issue, his proper remedies would have been to file a motion for a change of venue or a motion to quash the jury venire, respectively. We find that he did not avail himself of either of these remedies. Furthermore, we fail to ascertain why, based only on the fact that this is a capital case, additional peremptory challenges should be granted.
The statutory procedure for striking the jury under §12-16-100 was followed to the letter by the trial court. We hold that the trial court did not err in refusing to deviate from the statutorily prescribed procedure and that the appellant was in no way deprived of his right to a fair trial in that regard.
 XVII
The appellant contends that the death-qualifying of the jury deprived him of his constitutional right to a fair trial by an impartial jury. Specifically, he contends that the excusing of veniremen who were unwilling to consider a death sentence at the penalty stage from serving as jurors at the guilt stage unconstitutionally prejudiced his right to a fair trial because death qualified juries are unduly conviction-prone. He contends therefore, that a second jury should have been impaneled to try the penalty phase.
We note that the appellant lists a number of undesirable effects which he alleges resulted from the death qualification of the jury; however, none of these allegations was supported by any form of factual information either at trial or now on appeal.
This court has previously considered the issue of whether death-qualified juries are unduly conviction-prone and has held that they are not. Clark v. State, 451 So.2d 368
(Ala.Cr.App. 1984). In Taylor v. State, 442 So.2d 128
(Ala.Cr.App. 1983), this court held that there is no requirement that death qualification be delayed until the sentencing phase of the trial.
We therefore hold that the death qualification of the jury in no way deprived the appellant of his right to a fair trial by an impartial jury. Furthermore, we find that § 13A-5-46(b), Code of Alabama 1975, provides that where a defendant is tried and convicted by a jury, the sentencing hearing shall be conducted before that same jury unless it is impossible or impractical to do so. Finding neither of these factors to apply to this case, we hold that the trial court was correct in utilizing the same jury at both the guilt and sentencing phases of the trial.
 XVIII
The appellant next contends that his confession was incomplete and that the trial court erred in refusing to suppress it. Specifically, appellant contends that Investigator B.J. Gatlin, in making a written summary of appellant's oral confession, failed to include his statement that the gun *Page 53 
fired accidentally as a result of Mrs. McClenny's grabbing or pushing against it.
This court considered this precise issue in appellant's former appeal in Morrison v. State, 398 So.2d 730, 743
(Ala.Cr.App. 1979), rev'd on other grounds, 398 So.2d 751 (Ala. 1981). There, as here, we find that testimony by Deputies Horton and Crawford, that the appellant told them the shooting was accidental, was before the jury for their consideration in addition to appellant's signed written confession. The jury was made fully aware of the fact that the confession was incomplete. Therefore, as in Morrison, supra, we hold that the trial court did not commit reversible error in admitting the confession into evidence.
 XIX
Appellant next contends that the grand jury which indicted him was selected in such a manner as to violate state and federal laws. Specifically, he contends that an inadequate effort was made to obtain jurors from the more remote parts of the county, as evidenced by the fact that the portion of the eastern division outside Eufaula has 26% of the population of the eastern division of Barbour County, but had only 4% of the grand jury venire.
This court addressed this precise issue in appellant's former appeal in Morrison, supra, at 745. This court held that:
 "There is a presumption that no legal fraud exists with reference to the system used for the selection of jurors in the absence of proof to the contrary or an offer of such proof. Nixon v. State, 291 Ala. 657, 286 So.2d 315. The appellant has not met this burden of proof, and no evidence is shown in the record that the jury roll did not represent a cross-section of the community. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759."
Finding this, now as then, to be a correct statement of the law, and finding that the appellant has again not met the burden of proof, we hold that the grand jury which indicted appellant was not selected in such a way as to violate either state or federal law.
 XX
Appellant next contends that the trial court erred in permitting the state to nol-pros the count containing the allegation of malice aforethought while allowing the case to proceed to trial on the count not alleging malice aforethought.
This court in Morrison, supra, addressed this precise issue. There it was noted that it is competent for the prosecution, with the trial court's permission, to enter a nolle prosequi as to one or more counts in the indictment. Jackson v. State,21 Ala. App. 284, 107 So. 725 (1926). This court went on to hold that no error was committed in allowing the case to be tried before the jury on count one, which did not allege malice aforethought, because the statute under which the appellant was indicted addressed intentional killing in the course of a robbery, rather than first degree murder. Being in agreement with this court's holding in Morrison, supra, we again hold that no error was committed in allowing the case to be tried before the jury on count one.
 XXI
The appellant contends that the trial court erred in dismissing prospective juror Elzie L. Woods because of his opposition to the death penalty. We have addressed this issue fully in II, above. We again note that Mr. Woods's position and views were clearly such that they would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," Witt, supra,469 U.S. 424, 105 S.Ct. at 852, and hold that the trial court properly excused him.
 XXII
The appellant next contends that the trial court should have excluded his written statement as the product of an arrest made pursuant to a warrant issued without probable cause. *Page 54 
This court, in addressing this precise issue raised by appellant in Morrison, supra, held as follows:
 "The affidavit upon which the arrest warrant for appellant was issued for the charge of murder, reads as follows (omitting the formal parts):
 " 'Before me, Beverly Reeves, Magistrate-Warrant Clerk, in and for said County, personally appeared H.M. Brown who being duly sworn, deposes and says, on oath, that in said County on or about February 4, 1977 one Jesse Lee Morrison, alias, unlawfully and with malice aforethought, killed Margurite [sic] L. McClenny by shooting her with a gun or pistol against the peace and dignity of the State of Alabama. . . .'
 "For the charge of robbery, the affidavit upon which the arrest warrant was issued reads, as follows (omitting the formal parts):
 " 'Before me, Beverly Reeves, Magistrate-Warrant Clerk, in and for said County, personally appeared H.M. Brown who being duly sworn, deposes and says, on oath that in said County on or about February 4, 1977 one Jesse Lee Morrison, alias feloniously took $5.00 in United States Currency the value of Five Dollars the property of Margurite [sic] L. McClenny from her person, and against her will, by violence to her person, or by putting her in such fear as unwillingly to part with the same against the peace and dignity of the State of Alabama. . . .'
 "The Supreme Court of the United States, in Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, mandated that the probable cause requirements under the Fourth Amendment, as they pertain to the issuance of search warrants were also applicable to the issuance of arrest warrants. There, the Supreme Court required:
 " '[T]hat the judicial officer issuing such a warrant [for arrest or search] be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant.'
 "See also, Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684; Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.
 "Facially, the affidavits in the present case are conclusory. Each states mere conclusions by the affiant that the appellant committed the two offenses in question. The source of the affiant's conclusions and some of the underlying circumstances for those conclusions are not present. Under this information alone, the affidavits were not sufficient to enable the magistrate to make an independent determination of probable cause.
 "However, this alone does not, in and of itself, make the arrest unlawful or the warrants defective. Oral testimony is admissible to cure an otherwise defective affidavit made to secure an arrest, when the affiant has the information in his possession which he disclosed to the issuing magistrate before obtaining the warrant. Malone v. State, 51 Ala. App. 19, 282 So.2d 367. See also, Funches v. State, 53 Ala. App. 330, 299 So.2d 771.
 "The affiant, Hugh Mack Brown, Chief of Police of Eufaula, Alabama, stated that it was upon his affidavits that the two arrest warrants were issued. He testified that, in addition to the information contained in the affidavits, he told Beverly Reeves, the issuing magistrate, that he had written statements from Ruby Morrison and from James Morrison (the appellant's brother), implicating the appellant in the robbery and the killing of Marguerite McClenny. Further, he stated that Mr. Gatlin and Officer Tew had interviewed Arthur Thomas in New York and that Thomas had also implicated the appellant in the two offenses.
 "Although Ms. Reeves testified that she did not recall whether Mr. Brown gave her any additional verbal information, the trial judge ruled that Brown's *Page 55 
additional testimony was given at the time the affidavit was made.
 "The general rule in Alabama, regarding conflicting testimony given at a suppression hearing, is that such testimony poses a question for the trier of fact. Smith v. State, Ala. Cr. App., 351 So.2d 668. Therefore, when conflicting evidence is presented before a trial judge, great weight is given to his findings. Ard v. State, Ala. Cr. App., 362 So.2d 1320. The finding of a trial judge will not be disturbed on appeal unless this court is convinced that the conclusion reached by the trial judge was palpably contrary to the weight of the evidence. Smith v. State, Ala. Cr. App., 346 So.2d 382.
 "In the instant case, we find that the ruling of the trial judge was supported by substantial evidence. The additional oral testimony by Chief Brown, under these circumstances, was sufficient to establish probable cause for the issuance of the arrest warrants.
 "Further, the record reveals that the appellant was advised of his constitutional rights on at least four different occasions and the testimony was sufficient to show that he was fully informed of his Miranda rights. He was not threatened, coerced, or given any promises in order to obtain his written statement.
 "Therefore, we find that the trial court was correct in permitting appellant's statement to be offered into evidence."
Being in complete agreement with this court's holding on this issue in Morrison, as quoted above, we again find that the trial court was correct in permitting appellant's statement to be offered into evidence.
 XXIII
The appellant next contends that the trial court erred in failing to suppress his confession because it was secured after he requested counsel but before he had counsel. In addressing this precise issue in Morrison, supra, this court wrote as follows:
 "The transcript of evidence shows that, shortly after the Tennessee authorities released the appellant into the custody of Gatlin, Tew, and Brown, he was advised of his constitutional rights and asked if he wished to sign a waiver of counsel form and make a statement. At that time, he replied that he did not wish to make a statement and stated that he wanted an attorney.
 "The following day, after returning to Eufaula, Alabama, the appellant stated that he wished to make a statement. At that time, he was once again advised of his Miranda rights and signed a waiver of counsel form prior to making a written statement.
 "Any person arrested who asserts his right to counsel may later change his mind and voluntarily submit to questioning. See United States v. Hodge, 487 F.2d 945 (5th Cir. 1973); Jennings v. United States, 391 F.2d 512 (5th Cir. 1968).
 "In the present case, no contention is made that the appellant was denied either food or rest. Further, the present case does not indicate a long and protracted examination of the accused nor does it indicate that he was being held incommunicado or had been subjected to threats or abuse. The record in the present case demonstrates the contrary. See also, Gibson v. State, Ala. Cr. App., 347 So.2d 576; Anderson v. State, Ala. Cr. App., 339 So.2d 166.
 "Under these circumstances, we are of the opinion that the trial court's determination of the voluntary nature of appellant's statement was correct, and that it was properly admitted. Luschen v. State, 51 Ala. App. 255, 284 So.2d 282; Crowe v. State, 54 Ala. App. 121, 305 So.2d 396."
Finding the above reasoning to be correct, we adopt it and again hold that the trial court's determination of the voluntary nature *Page 56 
of appellant's statement was correct and that it was properly admitted at trial.
 XXIV
As required by § 13A-5-53(a), Code of Alabama 1975, this court reviews the propriety of the imposition of the death penalty in this case. Our review must include a determination of the following questions:
 (1) Was any error adversely affecting the rights of the defendant made in the sentence proceedings?
 (2) Were the trial court's findings concerning the aggravating and mitigating circumstances supported by the evidence?
 (3) Was the death penalty the proper sentence in this case?
As to the first question, we have reviewed the sentence proceedings and have found no error adversely affecting the defendant's rights. As to the second question, we have reviewed the record and are satisfied that the trial court's written findings concerning the aggravating and mitigating circumstances are fully supported by the evidence.
To answer the third question, whether the death penalty was properly imposed in this case, we must determine:
 "(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
 "(2) Whether an independent weighing of the aggravating and mitigating circumstances at the appellate level indicates that death was the proper sentence; and
 "(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
Alabama Code § 13A-5-53(b) (1975); see also Beck v. State,396 So.2d 645 (Ala. 1981).
There is nothing in the record before us which even intimates that the death penalty was imposed under the influence of passion, prejudice, or any other arbitrary factor.
Our independent weighing of the aggravating and mitigating circumstances leaves us with no doubt that the death penalty was appropriate in this case. The mitigating circumstances did not outweigh the aggravating circumstances. There was one statutory aggravating circumstance, that being that the "capital felony was committed while the defendant was engaged . . . in the commission of . . . a robbery." Code of Alabama 1975, § 13-11-6(4). There was one statutory mitigating circumstance, that being that "the defendant has no significant history of prior criminal activity." Code of Alabama 1975, § 13-11-7(1). Finding none of the other statutory mitigating circumstances under § 13-11-7 to be applicable and none of the claims of the nonstatutory mitigating circumstances raised by appellant to have merit, we find that the mitigating circumstances did not outweigh the aggravating circumstances and that the death penalty was appropriate in this case.
In regard to the final determination this court must make, we find that the death penalty imposed on the defendant is not excessive or disproportionate to the penalty imposed in similar cases. See, e.g., Ex parte Thomas, 460 So.2d 216 (Ala. 1984);Jones v. State, [Ms. 6 Div. 87, January 10, 1984] (Ala.Cr.App. 1984); Thomas v. State, 460 So.2d 207
(Ala.Cr.App.), aff'd, 460 So.2d 216 (Ala. 1983); Jones v. State,450 So.2d 165 (Ala.Cr.App. 1983); Singleton v. State,465 So.2d 432 (Ala.Cr.App. 1983), aff'd, 465 So.2d 443 (Ala. 1985);Bush v. State, 431 So.2d 555 (Ala.Cr.App. 1982), aff'd,431 So.2d 563 (Ala. 1983); Ritter v. State, 375 So.2d 270
(Ala. 1979); Jacobs v. State, 361 So.2d 640 (Ala. 1978).
We have searched the record, as required by Rule 45A, A.R.A.P., and have found no error which adversely affected the rights of the defendant. The sentence of death was proper in this case. Therefore, the *Page 57 
judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.